### 39125. GODWIN *et al.* v. AMERICAN CASUALTY COMPANY.

DECIDED DECEMBER 5, 1961.

*Barry L. Jones, J. E. B. Stewart,* for plaintiffs in error.

*Bennett, Pedrick & Bennett, Larry E. Pedrick,* contra.

FRANKUM, Judge. The uncontradicted facts in this case show that the insurance contract between the parties provides: "American Casualty Company . . . hereby insures Thomas M. Godwin and Bessie T. Godwin and agrees to pay indemnity for expense incurred as a result of injury or sickness . . . 'sickness' as used in this policy means sickness or disease contracted . . . while this policy is in force and which causes loss commencing during the policy term." The policy further provides: "If any renewal premium be not paid within the time granted the insured for payment, a subsequent acceptance of premium by the company or by any agent duly authorized by the company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the policy; provided, however, that if the company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the company, or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the company has previously notified the insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than 10 days after such date. In all other respects the insured and company shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement. Any premium accepted in connection with a reinstatement shall be applied to a period for which premium has not been previously paid, but not to any period more than 60 days prior to the date of reinstatement."

Dr. Godwin paid the initial premium, and according to the terms of the policy the next premium was due to be paid on April 1, 1960; however, the plaintiffs had 31 days from April 1, 1960, to pay the premium before the policy would lapse. But the renewal premium was not paid on the date due nor within 31 days thereafter. On May 5, 1960, Dr. Godwin mailed his check in the amount of the premium to the defendant, which check was accepted by it. On May 8, 1960, Mrs. Goodwin entered a hospital because of sickness and remained in the hospital until June 7, 1960. Thereafter she was readmitted to the hospital on July 21, 1960, and remained therein until August 11, 1960. The defendant failed and refused to pay the expenses incurred by the plaintiffs for the hospitalization of Mrs. Godwin resulting from her sickness.

Since the uncontradicted facts show that the policy had lapsed for nonpayment of premium prior to May 5, 1960, the date Dr. Godwin mailed his check to the defendant for the renewal of the policy, and that Mrs. Godwin became sick and was hospitalized on May 8, 1960, the plaintiffs were not entitled to a verdict against the defendant. The reinstatement provision of the policy quoted above was applicable, and operated to relieve the insurance company of liability for expenses incurred as a result of sickness (but not accidental injury) when such sickness and hospitalization had its inception within 10 days after the policy was reinstated.

There was a conflict of evidence as to when the defendant received and accepted the plaintiff's check and reinstated the policy. However, conceding, but not deciding, that the policy was reinstated on the date Dr. Godwin mailed the check in payment of the premium, the benefits of the policy for hospitalization as a result of sickness would not be an obligation of the defendant until 10 days thereafter, May 15, 1960.

The evidence further shows that Mrs. Godwin was admitted to the hospital on May 8, 1960, not because of an accident, but because of a "coronary occlusion." Her admission on July 21, 1960, was for a "coronary insufficiency." The insurance policy provides: " 'Any one period of hospital confinement due to sickness' means the distinct period between commencement and cessation of hospital confinement resulting from sickness arising

from a specific cause or causes; provided, however, that hospital confinement commencing within 90 days following cessation of a preceding confinement period and arising from the same or related cause(s) shall be considered as a continuation of such preceding period." It therefore follows that her admission to the hospital on July 21, 1960, and her confinement therein arose from a sickness of the same character as the sickness she suffered at the time of her first admission to the hospital.

Accordingly, the undisputed facts show the plaintiff's sickness (coronary occlusion) began within 10 days after the earliest possible date that the policy could have been reinstated, which was at a time when the plaintiffs were not entitled to the policy benefits, even if the policy was reinstated as of May 5, 1960.

The court properly directed the verdict.

*Judgment affirmed. Nichols, P. J., and Jordan, J., concur.*